By the Court. Hoffman, J.
The statute under which the present claim is to be sustained, if at all tenable, provides: “ That whenever a debt, amounting to fifty dollars, or upwards, shall be contracted by the master, owner, agent, or consignee of any ship or vessel within this state, for or on account of any work done, or materials or articles furnished in this state for or towards the building, repairing, etc., such ship or vessel, such debt shall be a lien upon the said ship or vessel, and shall be preferred to all other liens thereon, except mariner’s wages.” (2 R. S. 493, § 1.)
Two points are, then, to be established: first, the work must be done, or materials supplied, for or towards the building or repairing the vessel; second, the debt incurred for such work or materials must be contracted by the owner, master, agent, or consignee of the vessel. Each of these circumstances, must be found in the case before the lien can attach.
Such was the statute in force when the materials were furnished for which the lien is now asserted. It was not until March, 1855, *510 that the Act was amended, by adding the word “ builder” to the specification of those by whom the debt must be incurred.
I. The rule of law laid down in the first clause of the charge of the learned Judge, is as follows:—“ That to entitle the plaintiff to recover, it must appear satisfactorily, that the materials claimed to be fiirnished were actually incorporated into the vessel; that they were used in it, as well as ordered by the builder for it.”
This language gives, in clear and decided terms, an exposition of the phrase of the statute, “ furnished for, or towards, the building, etc., of the vessel.” We apprehend, that it declares the true rule of law upon the subject, and is fully sustained by the cases. It is of importance to examine the cases to some extent, as well to sustain the law so declared, as to test the subsequent clause of the charge.
In Phillips v. Wright (5 Sandf. 842) it was found that the timber was furnished for a particular ship, and the material men charged the price to Bishop & Simonson, who ordered it; but this did not interfere with his right to look to the ship. It was also found, that some of the timber was not used in the vessel. The plaintiff insisted, that the want of application of the timber to the building of the vessel, for which it was bought, was immaterial; that the statute conferred the lien, where the timber was sold and delivered for building the vessel, without regard to its actual application for that purpose.
■ But the Court treated this position as unsound. The whole theory of a lien for labor and materials, rests upon the basis, that such labor and materials have entered into, and contributed towards the production or equipment of the thing upon which the lien is impressed. This imposes upon the material man the necessity of seeing that the materials are applied to’ the purpose for which they are procured, if he design to sell upon a lien given to him. Ho undue hardship is imposed upon the material man by this. The Act gives him a privilege over all general creditors, on the footing, that the articles have contributed to the making of the ship. It is certainly not asking too much, that he should look to the application of what he furnishes, if he intends to create the statutory lien.
In the case of The Kiersage (2 Curtis, C. C. Rep. 421, Maine) *511 the facts were these:—The builders were constructing another vessel of the same tonnage and model, at the same yard, at the time when the one in question was being built. The libellants furnished materials for the two vessels, without distinguishing between them. The Court reversed a judgment below sustaining the lien, and sent the case to an assessor to ascertain what materials, purchased for the two vessels, were used in the construction of the Eaersage; for the price of such portion she was liable.
The Judge says, “ If materials are furnished for two vessels, although the contract does not specifically appropriate them, they may be considered as furnished to that vessel, in the construction of which they are used. When the builder has actually appropriated them, or some part of them to one vessel, it may be said that they were furnished for that vessel, and so be within the law.”
The statute of Maine is, in this particular, substantially like our own.
In Veltman v. Thompson, (3 Comstock, 440,) it was said, that the statute clearly implied, that the contract to work or furnish materials must be followed by an actual performance, before the lien could attach.
The case of The Pacific, (1 Blatch. C. C. Rep. 537,) shows also, that, to support the lien, the materials must be actually used in the vessel.
In the case of Ingersoll v. The Park Cabarga, (before Justice Nelson, MSS.,) the learned Judge says, “ I think it will be found, on looking into the origin and foundation of the rule in the Maritime Code, that the reason and policy upon which it rests, are applicable only to cases where the materials and supplies have - been actually furnished to the ship; in other words, where the material-man has parted with the materials, and the ship has received the benefit of them. In the case of materials and repairs, the articles furnished enter into, and give value to, the shin itself.”
The learned Judge refers to the case of The Neptune, before Sir John Nichol, (3 Hagg. Rep. 139,) as showing the origin and principle of the rule which gives material-men a privilege over other creditors.
The object of the local statutes of various States is, to confer *512 upon parties building or repairing domestic vessels, within the State, the privileges which the maritime law has given to foreign vessels under the codes of most commercial nations. This principle was applied to all vessels by the law of Rome, and has become incorporated into the commercial code of perhaps all the continental States, (Digest, 425, 26; Abbott on Shipping, 142; The Neptune, 3 Hagg. 124; Smith v. The Steamer Nastern Railroad, 1 Curtis, C. C. Rep. 253.)
In England this rule was rejected as to domestic vessels. But in Admiralty, and as to foreign vessels, the doctrine of the civil law prevailed at one time fully, and was overthrown by the courts of common law in the reign of Charles the II., (Abbott 150 n; The Neptune, 3 Hagg. 129; Reversed, 2 Knapp’s, Pr. Coun. Cases, 94.)
The Statutes 3d, 4th, Victoria, ch. 657, gives the lien as to foreign vessels. In our own country the maritime law has prevailed, (4 Wheaton, 438 ; 1 Turner, 74.)
It follows that local statutes may well receive their interpretation from the decisions under the maritime rule which they adopt, wherever their provisions are not peremptory and explicit. All those decisions proceed upon the ground that the materials have gone into the ship, and contributed to her existence, her perfection, or her value.
We conclude that the rule laid down by the learned Judge, in the first clause of his charge, is unquestionable law, and adopt the terms in which it is expressed.
II. But the next clause of the charge, and which is excepted to, is as follows:—“ When it was proved that materials were ordered for a vessel which was then building, and that they were furnished upon, and pursuant to such order, and were sent to the yard where the vessel was being built, such proof, (if no other evidence was given to impair it,) was sufficient prima facie evidence of the use of them for the purpose for which they were ordered to entitle a plaintiff to recover.”
We understand the charge to include the element, that the order is made by one possessing the statutory character of owner, agent, or otherwise. The question is, whether the charge is erroneous thus understood ?
The proposition contained in it may consist with the fact of *513 not a particle of the materials purchased being actually used in the vessel. If the plaintiff proved the matters supposed by the Judge, and rested, he would be entitled to recover.
We consider that there was error in this position of the charge, and error calculated to give a wrong direction to the judgment of the jury. It is not enough, in order to establish a lien upon a vessel, that an owner should order them, and that they be traced to the yard where the vessel is being built in common with other vessels. We are far from saying, that no testimony will suffice but such as pursues and marks each stick of timber from the lumber-yard of the seller to its embodiment in the vessel. Evidence short of this may amount to reasonable and satisfactory proof to a jury of the identity, between what is furnished, and what is employed. It would be improper and fruitless to attempt to define the character or amount of evidence which would be sufficient. The guide to the jury appears to us to be, the general proposition laid down by the Judge in the first instance, with noticing any circumstances in each particular case, which may lead to its just and proper application.
III. Another exception raises the question, whether the contract was made, or debt incurred, by the owner, or agent of the vessel ? In connection with this, the offer of the defendants to prove what was the relation between them and Ferine, is to be considered.
The Act of 1830, as before stated, contained only the words, owner, master, agent, or consignee. By a statute which was passed, and went into effect on the 29th of March, 1855, the word, builder, was added to the enumeration. All the timber was furnished in the present case, by the end of July, 1854.
In Hubbeil v. Denison, (20 Wendell, 181,) the plaintiff had been employed by one, who, it appeared, had no other interest in the vessel than as builder. It was held, that he was not an agent, for he had no power to bind the owners, but only himself personally. He was but a contractor, and, as such, was neither within the words, nor the reason or equity of the Act.
So, in the case of Udall v. The Steamship Ohio, (MSS. Sept. 30, 1853,) Justice Nelson observes:—“ A contractor employed generally to build a vessel—furnishing the materials—to complete her at a given time, and at ,a specific price, is, doubtless, the owner *514 ■until the vessel is built, completed, and delivered; and under' such a contract, the lien of the material-man would- clearly attach. But, in this case, the contract is for the construction of the ship after a specified- model and materials, to be built under the direction of one of her owners, and to be paid for from time to time, as the work progressed, and the materials were furnished. I cannot doubt that the defendants (for whom the vessel was built) became the owners of it as the work advanced, and was paid for. It seems to me clear, that the framers of the Act did not intend that persons dealing with a mere contractor, divested of ownership, should have a lien on the vessel. The debt is to be incurred by the owner or agent, master or consignee—not by a mere contractor to build.”
The subject is well discussed, and the nature of the agency, meant by the statute, much considered in the case of Childs v. The Steamboat Brunette, (4 Bennett’s Missouri Rep. 518.) It was there held, that a carpenter who had contracted to repair a boat, for a specific sum, was not an agent, so as to bind the boat by a lien, in favor of a lumber-merchant from whom he purchased the timber. The statute of Missouri is similar to our own.
And in Smith v. The Eastern Railroad Company, (1 Curtis C. C. Rep. 253,) where the statute of Massachusetts was carefully considered, it was decided, that a seller 'of materials to one who had contracted to build for a stipulated sum, with knowledge of the contract, could not assert a lien. See, also, Ladd v. Hughes, (15 Illinois Rep. 41.)
In Phillips v. Wright, before referred to, the Court say, that the evidence, that Bishop & Simonson built the vessel, established, presumptively, the fact, that they were the owners. The contract had not been produced, and there was nothing incompatible with the idea, that they were to continue the owners of the hull, until their work was completed, and the price fully paid.
But the case of Andrews v. Durant, in the Court of Appeals, (1 Kernan, 35,) is of principal importance, upon the present question.
The two leading points decided, were:—
1. That in general, a contract for the building of a vessel, or other thing not yet in esse, does not vest any property in the party for whom it is constructed, until the thing is finished and *515 delivered, or, at least, ready for delivery, and approved by such party.
2. That this rule is not varied by the fact, that payment is to be made by instalments, during the progress of the work, and is so made.
3. Hor is it enough, that the contract can only be fulfilled by completing and delivering the identical vessel commenced—not another similar, and corresponding with the agreement.
4. Hor, again, that there is a superintendent employed to regulate the work.
But it was admitted, that it was competent for the parties to agree when, and upon what conditions, the property in the subject should vest in the prospective owner. Such an agreement would be legal. And the inquiry in the case became this: Whether the parties had so contracted as to transfer the ownership as fast as the different parts of the vessel were added to the fabric. It was decided, that, that particular contract did- not so operate.
How, the offer of the defendants was, first, to prove that, by the agreement entered into before the building commenced, it was agreed, that the vessel should become the property of Harbeck & Co., as fast as the payments were made on her, and that said Harbeck & Co. were always in advance; next, that before the timber in question was purchased by Ferine, Harbeck & Co., they had overpaid Ferine for all work and materials, and were, under the agreement, the owners of the vessel.
This appears to us to meet the principle conceded in Andrews v. Durant. If such an agreement was proven as proffered, the ostensible ownership of Ferine would have been disproved, and that of Harbeck & Co. established.
The offer is very broad—so broad as to cover any case in which an express agreement would be sufficient to create an exception to the general rule, and displace the apparent, and make out the actual ownership.
Questions of difficulty may certainly arise, such as, whether the ownership vests until payment of a specific instalment is actually made, and whether a subsequent failure to pay would defeat the ownership in the part previously vested, under an agreement providing for a progressive ownership. We do not *516 enter upon such questions. It is sufficient to say, that under the offer a case can be made which will defeat the lien.
We think a new trial must be ordered, with costs to abide the event.